Herbert S. DAWIDOFF, Acting Regional Director of the Eighteenth Region of the National Labor Relations Board, For and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MINNEAPOLIS BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL–CIO, and Local No. 34, Sheet Metal Workers International Association, AFL–CIO, Respondents.

Civ. No. 4–76–422.

United States District Court,
D. Minnesota,
Fourth Division.

March 30, 1977.

Herbert S. Dawidoff, Regional Attorney, Region 18, National Labor Relations Board, Minneapolis, Minn.

Samuel I. Sigal, Minneapolis, Minn., for respondents.

MEMORANDUM

MILES W. LORD, District Judge.

The parties are before the Court pursuant to a remand from the Court of Appeals for the Eighth Circuit in order for this Court to limit duration of a 10(*l*) injunction to "the minimum time necessary for Board review if the Board were to accord the case its most expeditious handling." *Dawidoff,*

*Acting Regional Director of the Eighteenth Region of the NLRB, for and on behalf of the NLRB v. Minneapolis Building and Construction Trades Council, AFL–CIO, and Local No. 34, Sheet Metal Workers International Association, AFL–CIO,* 550 F.2d 407 (1977).

The facts are reported in the Memorandum and Order of this Court by the same name, dated October 13, 1976, and in the opinion of the Court of Appeals.

The National Labor Relations Board is acting on behalf of Krasen, a mechanical subcontractor working at the Howard Lake School construction job, in Minnesota. Krasen employees are currently represented by the Christian Labor Association under a contract which is in effect from 1976 through 1978. They were previously represented by the Christian Labor Association in a 1974 through 1976 contract. The Sheet Metal Workers Local No. 34 is an AFL–CIO labor organization associated with the Minneapolis Building and Construction Trades Council, a group of AFL–CIO building trades affiliates. At trial, the parties stipulated that Krasen paid wages and provided benefits which were lower than those paid by other subcontractors for the same kind of work.

On August 5, 1976, the respondents placed a banner near the gate used by Krasen employees at the Howard Lake School construction site. The banner stated that the mechanical work being performed at the site by Krasen was being done at substandard wages and benefits for the area. On September 27, 1976, the Acting Regional Director petitioned the district court for injunctive relief pursuant to § 10(*l*) of the National Labor Relations Act, *as amended,* 61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(*l*). This Court issued an Order to Show Cause on September 29, 1976. The hearing was held on October 8, 1976, and the injunction was entered on October 13, 1976.

This Court noted that the work on the construction site might be completed well in advance of the time at which the Board ever received a decision from the Administrative Law Judge or rendered a decision itself. As a consequence, we noted, "if injunctive relief were granted in this case pending final adjudication by the Board, what was intended to be interim relief may actually result in a final adjudication," on the merits. Nevertheless, with reluctance, this Court adhered to the statutory requirements and issued the temporary injunction.

By October 20, 1976, the Acting Regional Director had taken an appeal to the Eighth Circuit concerning other aspects of this Court's decision in the case. On March 1, 1977, the Eighth Circuit rendered its decision in the case, holding that in a situation such as this, a court may properly limit the duration of its § 10(*l*) injunctive remedy when the practical effect of a limited injunction may be to deny the parties a final determination of the charge by the NLRB prior to the completion of the picketed project. In the meantime, a hearing was held before the Administrative Law Judge, on October 28, 1976, and briefs were filed on December 9, 1976. No decision had been rendered by the Administrative Law Judge by the time the Eighth Circuit issued its opinion, a delay which the Eighth Circuit found to be inexcusable under the circumstances. The Administrative Law Judge's decision was finally issued on March 17, 1977.

The issue presently before this Court is what is the minimum time necessary for Board review if the Board were to accord the case its most expeditious handling. The Eighth Circuit instructs us, that after determining the minimum time necessary for review, the Court is to restrict the term of the 10(*l*) injunction to a period of time not shorter than the period of time necessary for the most expeditious review by the Board. It should be noted that the goal behind this determination is to encourage the Board to act with the utmost efficiency and promptness in its review of the Administrative Law Judge's decision.

A hearing on this matter was held on March 29, 1977, at which time the Court

accepted the affidavits of the parties as a sufficient description of the existing circumstances on which to base its decision. The parties were in agreement as to the facts set forth in the affidavits.

The affidavit of David G. Adolfson, the Senior Vice President of Adolfson & Peterson, the general contractor on the Howard Lake, Minnesota school construction project, established that Krasen Plumbing & Heating Co. will have completed its portion of the work on the job on about April 13, 1977. The affidavit further predicted that the general contractor, Adolfson & Peterson, will have completed its portion of the contract by about April 29, 1977.·

According to the Eighth Circuit's opinion, the burden was on the Board to establish, "the minimum time necessary for Board review if the Board were to accord the case its most expeditious handling." The Board presented an affidavit from John C. Truesdale, the Executive Secretary of the National Labor Relations Board. The Court adopts the facts set forth in this affidavit, paragraphs 1–4 and 6, as its findings with respect to the nature of the Board's procedures in 10(*l*) cases and the length of time necessary for the Board to make its most expeditious review in the case at hand. For that reason, those portions of the affidavit are set forth below.

## AFFIDAVIT

I, John C. Truesdale, being duly sworn, upon my oath depose and say:

1. I am presently Executive Secretary of the National Labor Relations Board and have been so since June 1972. As Executive Secretary, I am charged with the administrative management of the Board's judicial affairs, which includes oversight of the Board's decision-making processes. My responsibilities include maintenance of the Board's docket, assignment of cases and monitoring their progress before the Board, and issuance of· its final decisions.

2. In response to the Eighth Circuit's inquiry in *Dawidoff v. Minneapolis Building and Construction Trades Council*, No. 76–1891, as to the "minimum time necessary for Board review if the Board were to accord the case its most expeditious handling," I will outline the Board's procedures for assignment, review and decision of unfair labor practice cases, after the issuance of an Administrative Law Judge's (ALJ) decision.

(a) The ALJ decision is formally issued by the Executive Secretary and is served on the parties with an order transferring the proceedings to the Board and with an excerpt from the Board's Rules and Regulations regarding appeal to the Board. The rules provide 23 days for the filing of exceptions and supporting briefs. Within 13 days from the last day on which exceptions may be filed, a party opposing the exceptions may file either an answering brief to the exceptions or cross-exceptions and supporting briefs. Within 13 days from the last date on which cross-exceptions may be filed, a brief in opposition to cross-exceptions may be filed. In other words, a maximum time of 49 days, excluding any extensions of time, is provided. However, in any case the parties may expedite the process by filing exceptions and responses within a shorter period of time. Moreover, if no timely exceptions are filed, the Board promptly enters an order adopting the ALJ decision.

(b) Within 10 days after the filing of the initial exceptions with the Board, the case is assigned to one of five Board Members and thereby to the panel which he or she leads. Cases in which Section 10(*l*) injunctive relief is pending are specially identified as priority cases in which expedited action is required.

(c) Within 48 hours after the Board Member receives a case, it is assigned

to a staff attorney for research and analysis.

(d) Depending upon its complexity, difficulty, or priority nature, in from one to three weeks, the usual case is presented to a sub-panel composed of an experienced counsel representing each of the Board Members on the panel, which reaches a tentative decision as to the disposition of the case.

(e) The proposed decision is then drafted by the attorney pursuant to instructions of the sub-panel and reviewed by the supervisory personnel. Again depending on the character of the case, up to three weeks are allowed for drafting and revising the tentative decision.

(f) When the proposed draft decision comports with the tentative decision reached by the sub-panel and has the approval of the originating Board Member, it is circulated among the other two participating panel Members for approval and to the non-participating Members for clearance. Up to two weeks are allowed for this process, again depending on the character of the case.

(g) However, any case may be referred for full Board review by the sub-panel, by any participating panel Member or by any non-participating Member who does not believe the decision as drafted comports with existing Board precedent or policy. If this occurs the time needed for review and decision is obviously extended.

(h) When final agreement has been reached on the decision and order, the case must still be finally edited before it may be reproduced for publication. Approximately one week is needed for these final mechanical procedures before the decision may be issued to the parties.

3. While it is recognized that the statute requires that unfair labor practices cases involving Section 10(*l*) injunctive relief are to be accorded priority treatment in preliminary investigation and that the Board's Rules and Regulations require such priority treatment through the adjudication and decision-making stages (Rules and Regulations Sections 102.95–.97), it is noted that these cases often present some of the most complex and difficult legal issues. Thus, even though the case is specially identified as a priority case, the analysis and decision-making process in these cases is frequently more time-consuming than in the average unfair labor practice case.

4. In the underlying unfair labor practice case involved in this proceeding, the Board, in deference to the Eighth Circuit's decision, is prepared to accord the case extraordinarily expeditious handling. Accordingly, it has already suspended its normal rules for the filing of exceptions to the ALJ decision which issued on March 17, 1977, and has ordered a shortened period of 13 days. Exceptions are thus due by March 30, and no extensions of time will be granted except in extreme circumstances. Additionally, it has ordered that no cross-exceptions or reply briefs will be permitted.

Of course, if no exceptions are filed the ALJ decision will be adopted promptly. However, if exceptions are filed the Board will waive its normal internal procedures for deciding cases and will commit itself to issuance of the decision at the earliest possible time, not to exceed thirty days or as much sooner as the complexity of the issues will permit—perhaps even within 15 days.

.    .    .    .    .

6. As of March 17, 1977, there were 414 unfair labor practice cases assigned and being considered by the Board. Of these, 19 involved violation of sections of the Act where the seeking of Section 10(*l*) injunctive relief is mandatory. An additional 22 of those

cases involved jurisdictional disputes where the seeking of 10(l) relief is discretionary.*

On March 30, 1977, the parties stipulated that the temporary injunction issued pursuant to § 10(l) of the Act granted by this Court in its Memorandum and Order dated October 13, 1976, shall automatically expire and terminate either on April 29, 1977, or on the date that the National Labor Relations Board files its decision, whichever date is the earlier. That time schedule is satisfactory to the Court. First, it is apparent that this Court's interest in the duration of the injunction has indeed had the intended consequence of resulting in a more expeditious review of this case than it would otherwise have received. Second, the period allowed constitutes the minimum time necessary for Board review when the Board is according the case its most expeditious handling. However, this Court does want to draw attention to the fact that even with this expedited time schedule it is highly unlikely that the Board will render its decision prior to the completion of the work by Krasen on the site. Krasen will probably complete its work by April 13th, and the Board may well not render its decision until April 29th. This is precisely the unfortunate situation which this Court predicted and deplored in the Memorandum and Order dated October 13, 1976. It illustrates why the delay of the Administrative Law Judge in issuing her decision was inexcusable.

Nevertheless, there is nothing further that can be done to remedy that problem at this late date. Accordingly, it has been ordered in an order dated March 30, 1977, that the temporary injunction issued pursuant to § 10(l) of the Act heretofore granted by the Court in its Memorandum and Order dated October 13, 1976, shall automatically expire and terminate either on April 29, 1977, or on the date that the National Labor Relations Board files its decision, whichever date is the earlier.

While the procedure may have been relatively ineffective in the instant case, it may have as its collateral effect rather far reaching implications insofar as it applies to the rather ponderous procedures of the NLRB which owes its existence to a congressional desire, among other things, to expedite the resolution of labor disputes. S.Rep. No. 105, 80th Cong., 1st Sess. 7, 8 (1947), *reprinted in* I NLRB Legislative History of the Labor Management Relations Act, 1947, at 413, 414 (1948). *Eisenberg v. Hartz Mountain Corp.*, 519 F.2d 138, 144 (3d Cir. 1975). The fact that experience finds that the NLRB through its proceedings has achieved the opposite result may well have been responsible for the opinion of the court above.

* In paragraph 5 of the affidavit, Mr. Truesdale, on behalf of the Board, states that this time schedule represents a significant departure from the normal procedure of the Board, and that such treatment could not be accorded every case involving a 10(l) injunction which comes before the Board:

5. It is emphasized that this time schedule represents a significant departure from the normal procedure and has been adopted in this case solely as a result of Eighth Circuit's decision and remand order and in deference to the Eighth Circuit's observations that the case presents a relatively simple factual determination and that the completion of the picketed construction project is imminent. By handling this case in this fashion, the Board is according the case priority over all other pending cases, including cases of similar, priority character. This is extraordinary treatment which could not be rendered to every case involving Section 10(l) relief which comes before the Board, for it would delay the processing of pending Board cases to an inordinate degree, and would thereby prejudice the parties involved in those cases. The Court regards that paragraph as an argument on behalf of the Board and has rejected its reasoning in the case at hand. The Board's ability to deal with this case on an expedited schedule indicates, in fact, that it may be able to operate on such a schedule in future cases as well. Accordingly, such disclaimers of the NLRB will not be evaluated at this time, but will be left to the judgment of future courts.